# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **EDWARD WILSON, JR.,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | **Case No.: 2:04-CV-3261-VEH** |
| ] | |
| **JRHBW, INC., d/b/a** ] | |
| **REALTYSOUTH and USS** ] | |
| **REAL ESTATE, a Division of** ] | |
| **UNITED STATES STEEL** ] | |
| **CORPORATION,** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION

### I.   INTRODUCTION

This lawsuit was filed by Plaintiff Edward Wilson ("Wilson") on November 18, 2004. (Doc. #1). Subsequently, Wilson filed two amended complaints. (Doc. #5; Doc. #11). The undersigned inherited this case by way of reassignment on February 15, 2005. (Doc. #15). As a result of prior rulings, the sole claim remaining in this case is one for discriminatory discharge on the basis of race in violation of Title VII and 42 U.S.C. § 1981. (Doc. #22; Doc. #23).

The court has before it Defendant JRHBW, Inc. d/b/a RealtySouth's ("RealtySouth") Motion for Summary Judgment (Doc. #37) and Defendant United States Steel Corporation's ("USS") Motion for Summary Judgment (Doc. #39), both

of which were filed on July 17, 2006.[1]  Both motions have been fully briefed and are ripe for a decision.  For the reasons explained below, the court concludes that RealtySouth's Motion for Summary Judgment is due to be denied, and that USS's Motion for Summary Judgment is due to be granted.

## II. STANDARD OF REVIEW

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R .CIV. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133

---

[1] Also pending before the court are Defendants' Motion to Strike Entire Summary Exhibit (Doc. #55), Motion to Strike Additional Affidavits (Doc. #57), and Defendants' Motion to Strike Certain Summary Judgment Evidence (Doc. #58), all of which were filed on October 13, 2006.  The nature of the court's decision on summary judgment does not turn upon the evidence challenged in these motions.  Accordingly, and for the purposes of summary judgment only, they are due to be denied as moot.

(2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

### III. STATEMENT OF FACTS[2]

RealtySouth has "corporate" brokerage arrangement with USS in which RealtySouth's independent contractor agents are given all of the listings for homes to be sold at USS's development in Hoover, The Preserve. AF No. 2.[3] Three (3) RealtySouth agents made up the "sales team" who staffed the sales center at The Preserve and worked to sell the listed homes. AF No. 3.1. Originally, the three (3) members of this team were Kathy Bryant ("Bryant") (formerly Lansden), Julie Lucas

---

[2] These are the facts for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[3] The designation "AF" stands for admitted fact and indicates a fact offered by RealtySouth that Wilson has admitted in his written submissions on summary judgment, in his deposition testimony, or by virtue of any other evidence offered in support of his case. Whenever Wilson has adequately disputed a fact offered by RealtySouth, the court has accepted Wilson's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of RealtySouth's Statement of Facts as set forth in Doc. #38 and responded to by Wilson in Doc. #47. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts. For example, (AF No. 3.2) would indicate that the second sentence of paragraph 3 of RealtySouth's Statement of Facts is the subject of the court's citation to the record. Similarly, the designation "AAF" stands for additional admitted fact and corresponds to Wilson's Statement of Facts contained in Doc. #47 and responded to (or deemed admitted due to the failure of RealtySouth's to specifically respond to them) in Doc. #53. Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

("Lucas"), and Wilson. AF No. 3.2. These agents began their work as the sales team for The Preserve in the summer of 2001. AF No. 3.3. Wislon was the only African-American applicant for a place on the sales team at The Preserve. AF No. 5.2.

Lucas did not remain on the sales team. AF No. 6.1. Lucas was replaced by another agent, Merry Leach ("Leach"). AF No. 7.1. Leach came on as a team member and the sales manager at The Preserve. AF No. 7.4.

On November 18, 2003, Richard Grimes ("Grimes"), RealtySouth's Regional Vice President of New Home Sales, removed Wilson from the sales team at The Preserve. AF No. 18.1; AAF No. 6. Grimes made this decision based upon feedback and information he received from, primarily, the other sales team members, including the sales manager, Leach. AF No. 18.2.

Three (3) days prior to his removal, Wilson expressed a strong interest in purchasing a home at The Preserve. AAF No. 7.1. Three weeks prior to his separation, Wilson sold a home to his son, who was the first African-American to purchase a home in The Preserve. AAF No. 7.2. Wilson was replaced on the team by a Caucasian man, Ty Elliott ("Elliott") on December 3, 2003. AF No. 32.1; AAF No. 15.

## IV. ANALYSIS

### A. RealtySouth's Motion for Summary Judgment

In a circumstantial evidence case alleging discrimination,[4] the four *prima facie* elements that Wilson must establish are: (1) he belongs to a protected category; (2) he suffered an adverse employment action; (3) he was treated less favorably than other similarly situated employees outside of his protected class; and (4) he was qualified for the position. *See, e.g.*, *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (outlining *prima facie* elements for race discrimination claim). Therefore, the initial inquiry for the court is whether Wilson has adduced sufficient evidence of a *prima facie* case of discrimination.

### 1. Wilson can establish a *prima facie* case of race discrimination because he was replaced by a Caucasian sales agent.

For the purposes of summary judgment, Wilson has shown that he is a member of a protected racial class, that he suffered an adverse employment action, and that he was qualified for the position that he held—an original member of the sales team at The Preserve. However, RealtySouth maintains that Wilson's proof is lacking as to *prima facie* element number 3—evidence of similarly situated employees outside

---

[4]Wilson offers no evidence that would support a "direct evidence" claim of racial discrimination.

of his protected category (*i.e.*, non-minorities, who were treated more favorably than he).

However, RealtySouth's analysis of the relevant comparative evidence ignores the undisputed fact that Wilson was replaced by Elliott, a Caucasian male. As recognized in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993), Wilson's replacement by a non-minority is sufficient to establish a *prima facie* case of discriminatory discharge. *See id.* ("Petitioners do not challenge the District Court's finding that respondent satisfied the minimal requirements of such a *prima facie* case (set out in *McDonnell Douglas*, *supra*, at 802, 93 S. Ct. at 1824-1825) by proving (1) that he is black, (2) that he was qualified for the position of shift commander, (3) that he was demoted from that position and ultimately discharged, and (4) that the position remained open and was ultimately filled by a white man.") (citation omitted); *see also Coutu v. Martin County Bd. of County Com'rs*, 47 F.3d 1068, 1073 ("Absent direct evidence of discrimination, a plaintiff in a termination case establishes a *prima facie* case by showing (1) that she is a member of a protected class, (2) that she was qualified for the position held, (3) that she was terminated, and (4) that she was

replaced by a person outside the protected class.") (footnote omitted);[5] *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1498 n.3 (11th Cir. 1985) (same) (citation omitted). Accordingly, RealtySouth's Motion for Summary Judgment is due to be denied on the basis that Wilson can establish a *prima facie* case of race discrimination.

> **2. Wilson has adduced sufficient evidence from which a reasonable jury could conclude the existence of pretext in RealtySouth's articulated rationale for discharging him.**

RealtySouth alternatively maintains that even if Wilson is able to establish a *prima facie* case of race discrimination, judgment as a matter of law is still appropriate because of his inability to show pretext in the decision to discharge him. More specifically, RealtySouth's articulated explanation for firing Wilson relates to certain criticisms presented to Grimes of Wilson's performance-related issues, including paperwork questions, lack of necessary computer skills, and attendance problems. (Doc. #38 at 22).

In addressing the issue of pretext, the Supreme Court has stated:

---

[5]Surprisingly, RealtySouth cites to the *Coutu* decision as support for its position that Wilson has failed to establish a *prima facie* case of race discrimination. (Doc. #38 at 16). The other Eleventh Circuit opinions relied upon by RealtySouth similarly lend no credibility to its argument that Wilson has failed to make out a *prima facie* case. *See, e.g., Krieg v. Paul Revere Life Ins. Co.*, 718 F.2d 998, 999 (11th Cir. 1983); *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995).

> Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves*, 530 U.S. at 148 (emphasis in original); *see also Combs v. Plantation Patterns, Inc.*, 106 F.3d 1519, 1532 (11th Cir. 1997) ("[T]his circuit's post-*Hicks* decisions uniformly hold that once a plaintiff has established a *prima facie* case and has put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions, that alone is enough to preclude entry of judgment as a matter of law.").

Drawing all reasonable inferences in favor of Wilson, multiple material factual disputes based upon the testimony of not only Wilson,[6] but also other witnesses as well as documentary evidence, establish "weaknesses, implausibilities, inconsistencies, incoherencies and contradictions" in RealtySouth's articulated

---

[6]RealtySouth unconvincingly attempts to cast this case as one in which Wilson's testimony provides the only basis for creating material factual issues.

9

reasons for dismissing Wilson, which preclude the entry of summary judgment in favor of RealtySouth on Wilson's race discrimination claim. *See Combs*, 106 F.3d at 1538. For example,[7] RealtySouth attempts to characterize Grimes as the sole relevant decisionmaker. However, Grimes admittedly based his decision upon oral input that he received from various witnesses, including Leach, the sales manager and Wilson's direct supervisor.

Accordingly, RealtySouth's contention that Leach's alleged racially offensive conduct toward Wilson (*see* Doc. #38 at 27-28), including (1) calling him the "tissue man" in front of other people when he brought toilet tissue at her request to the sales center; (2) asking him to unstop the toilet at the sales center; and (3) stopping at an openly confederate-friendly barbecue restaurant as part of a group lunch that included Wilson (*see* Doc. #47 at Ex. 6; Doc. #42 at Ex. E at 221-22), cannot be relied upon to show a possible discriminatory motive is without merit. As sales manager for The Preserve, Leach's potential racial animus is relevant because she undisputedly provided key input into (and potentially impermissibly tainted) the overall decisionmaking process, regardless of whether the cat's paw doctrine applies to her discussions with Grimes. (*See* Doc. #53 at 5).

---

[7]Rather than provide an exhaustive discussion of each and every disputed issue of material fact that it found in the record pertaining to pretext, the court highlights those areas that it finds particularly illustrative.

Moreover, even treating Grimes as the only relevant decisionmaker, a reasonable jury could infer, based upon the short elapse of time between (1) Wilson's sale of property to his son, the first African-American owner in The Preserve; (2) Wilson's expression of an interest in also purchasing a residence in The Preserve; and (3) Wilson's dismissal from the sales team, which events all occurred within a period of one (1) month, could mean that Grime's decision was racially-motivated.

The lack of any documentation which tends to corroborate any of the performance-related issues related to Wilson's dismissal (AAF No. 10; *see generally* Doc. #47 at Ex. 5(Wilson's agent's file); *see also* Doc. #43 at Ex. F at 50-51 ("Q. Do you have records of any of these problems?  A.  No.")), while not necessarily dispositive of pretext, is definitely a piece of circumstantial evidence upon which a reasonable jury could rely to conclude the existence of pretext, especially given the scattered testimony concerning Wilson's purported performance problems.[8]

---

[8]For example, one of the performance areas relied upon by RealtySouth is Wilson's absenteeism, a problem which Grimes did not list during his deposition and one which Leach, the sales manager, did not recall ever discussing with Grimes or Wilson. (Doc. #43 at Ex. F at 46-48). Moreover, Bryant's complaints about Wilson's absenteeism to Grimes occurred when the sales team was still in a trailer, and over at least  one (1) year or possible two (2) from Wilson's removal. (Doc. #42 at Ex. C at 42-43; Doc. #47 at Ex. 7 at 40-42). Additionally, Boyd, the Project Manager for USS, testified that he saw Wilson on location the same amount of time that he saw other agents. (Doc. #47 at Ex. 1 at 42-43). Similar discrepancies appear in the record regarding paperwork problems and lack of computer skills.

Similarly, there is significantly probative evidence that other members of the sales team may have engaged in similar conduct, but were not fired for any similar performance issues.[9] Additionally, the numerous awards and recognition that Wilson received as an agent for RealtySouth,[10] including a letter from the President and CEO of RealtySouth, congratulating Wilson for being a "leader among leaders" in the Birmingham Real Estate Market and commending him for his "success, professionalism, and outstanding results" less than one (1) month after his separation (*see* Doc. #47 at Ex. 3 at 3), also bring into question the validity of any performance deficiencies as a basis for his dismissal.

Moreover, RealtySouth's reliance upon its treatment of Lucas, who is Caucasian and was purportedly dismissed because she had personality conflicts with several of the builders on site at The Preserve as a means to affirmatively show a lack of pretext in its treatment of Wilson is not persuasive. The standard to be applied in

---

[9]For example, as it relates to the area of absenteeism, Wilson recalls that Leach would have her daughter come to The Preserve site to cover her shifts. (Doc. #42 at Ex. E at 245). Leach also appeared three hours late for the opening of the sales center, for which Grimes was present. (Doc. #42 at Ex. E at 219-220). Similarly, while the record on summary judgment reflects that Wilson may have had difficulty completing paperwork at times, there is competing testimony reflecting that most of his closings were correct, and that he did not experience any greater number of closing incidents than any other comparable agents. (Doc. #43 at Ex. H at 63).

[10](*See generally* Doc. #47 at 10-11).

evaluating whether employees are similarly situated is now a familiar one:

> To show that employees are similarly situated, the plaintiff must show that the "employees are similarly situated in all relevant respects. . . . In determining whether employees are similarly situated . . . it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."

*Knight v. Baptist Hospital of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (quoting *Holifield,* 115 F.3d at 1562).

Additionally, the Eleventh Circuit has held that "[t]he comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (internal citations omitted); *see also Manicci v. Brown*, 171 F.3d 1364, 1668-69 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's conduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."). Wilson and Lucas are not suitable comparators for at least two reasons: one, there is evidence that Lucas's departure from The Preserve was reported by RealtySouth to the sales team as being a voluntarily move on her part;[11] and two, the reasons offered by

---

[11]For example, Wilson testified concerning Lucas that "we were told that Julie no longer wanted to be a part of The Preserve. And she wanted to get back into resale. So, I'm not certain that she was removed or if she actually wanted to go back into resale." (Doc. #42 at Ex. E at 223).

13

RealtySouth for Lucas's separation were not performance-related, but rather were personality-related and more subjective. Accordingly, RealtySouth's reliance upon Lucas as a means to show an absence of pretext in its treatment of Wilson is misplaced because the substantially similar standard governing comparator evidence has not been met.

Therefore, in light of the above analysis, not only has Wilson formulated a *prima facie* case of race discrimination, but also he has met his burden of demonstrating material issues of disputed fact on the question of pretext. As such, RealtySouth's Motion for Summary Judgment is due to be denied on its alternative pretext argument.

### B.     USS's Motion for Summary Judgment

USS bases its Motion for Summary Judgment on the lack of any evidence that it shared any type of agency or employment relationship with Wilson or that it was involved in his removal from the sales team at The Preserve. (Doc. #40). Wilson's opposition to summary judgment (Doc. #47) is devoid of any challenge to the substance of USS's Motion for Summary Judgment.[12]  Accordingly, Wilson has

---

[12]*See also* Doc. #53 at 1 n.1 ("Undoubtedly, U.S. Steel is entitled to summary judgment a[s] is demonstrated by Plaintiff's failure to even argue that it was involved in his removal from The Preserve sales team.").

abandoned his claims of discrimination against USS,[13] and summary judgment in favor of USS is due to be granted.

## V. CONCLUSION

As analyzed above, material issues of disputed fact preclude the entry of summary judgment in favor of RealtySouth and its Motion for Summary Judgment is due to be denied. On the other hand, USS's Motion for Summary Judgment is due to be granted due to Wilson's abandonment of any claims asserted against it in filing his opposition to summary judgment. Because the court's decision on summary judgment does not turn upon any of the evidentiary issues raised in Defendants' three (3) motions to strike,[14] they are all due to be denied as moot. The court will enter an

---

[13]*See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001). *Cf. McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment").

[14]*See* n.1, *supra*.

order consistent with this Memorandum Opinion.

    **DONE** and **ORDERED** this 1st day of December , 2006.

                                            **VIRGINIA EMERSON HOPKINS**
                                            **United States District Judge**